UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------
MENDEL REIZES
on behalf of himself and
all other similarly situated consumers

                          Plaintiff,


          -against-


ROSICKI, ROSICKI & ASSOCIATES, P.C.,
UWANYNE A. MITCHELL, ESQ AND
MEGAN SUTTELL, ESQ

                          Defendants.

----------------------------------------------------------

## CLASS ACTION COMPLAINT

### *Introduction*

1.    Plaintiff Mendel Reizes seeks redress for the illegal practices of Rosicki, Rosicki &
      Associates, P.C. ("Rosicki"), Uwanyne A. Mitchell, Esq. ("Mitchell"), and Megan
      Suttell ("Suttell"), concerning the collection of debts, in violation of the Fair Debt
      Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA").

### *Parties*

2.    Plaintiff is a citizen of the State of New York who resides within this District.

3.    Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA, in
      that the alleged debt that Defendants sought to collect from Plaintiff is a consumer debt.

4.    Upon information and belief, Defendant Rosicki, Rosicki & Associates, P.C.'s principal
      place of business is located in Plainview, New York.

5.    Upon information and belief, Defendant, Uwanyne A. Mitchell, Esq.'s principal place of
      business is located in Plainview, New York.

6.    Upon information and belief, Defendant, Mitchell's principal place of business is located in Plainview, New York.

7.    Upon information and belief, Defendant Suttell's principal place of business is located in Plainview, New York.

8.    Defendants are regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

9.    Defendants are each under the category of a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

### Jurisdiction and Venue

10.   This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

11.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### Background Facts

12.   The Fair Debt Collection Practices Act prohibits professional debt collectors from using "false, deceptive, or misleading representations or means in connection with the collection of any debt" and from "using unfair or unconscionable means to collect" a debt. 15 U. S. C. §§1692e, 1692f. A debt collector that attempts to collect a time-barred debt in foreclosure proceedings has violated all of these prohibitions.

13.   Professional debt collectors have built a business out of buying stale debt, using foreclosure proceedings to collect it, and hoping that no one notices that the debt is too old to be enforced by the courts. This practice is unfair, unconscionable, it is also false, deceptive and misleading all in violation of §1692e and 1692f.

14.    Americans owe trillions of dollars in consumer debt to creditors—credit card companies, schools, and car dealers, among others. See *Fed. Reserve Bank of N. Y., Quarterly Report on Household Debt and Credit 3 (2017)*. Most people will repay their debts, but some cannot do so. The debts they do not pay are increasingly likely to end up in the hands of professional debt collectors—companies whose business it is to collect debts that are owed to other companies. See *Consumer Financial Protection Bur., Fair Debt Collection Practices Act: Annual Report 2016, p. 8*. Debt collection is a lucrative and growing industry. Last year, the Nation's 6,000 debt collection agencies earned over $13 billion in revenue. Ibid.

15.    Although many debt collectors are hired by creditors to work on a third-party basis, more and more collectors and servicers also operate as "debt buyers"—purchasing debts from creditors outright and attempting to collect what they can, with the profits going to their own accounts. *See FTC, The Structure and Practices of the Debt Buying Industry 11-12 (2013)* (FTC Report); CFPB Report 10. Debt buyers now hold hundreds of billions of dollars in consumer debt; indeed, a study conducted by the Federal Trade Commission (FTC) in 2009 found that nine of the leading debt buyers had purchased over $140 billion in debt just in the previous three years. *FTC Report, at i-ii, T-3* (Table 3).

16.    Because creditors themselves have given up trying to collect the debts they sell to debt buyers, they sell those debts for pennies on the dollar. Id., at 23. The older the debt, the greater the discount: While debt buyers pay close to eight cents per dollar for debts under three years old, they pay as little as two cents per dollar for debts greater than six years old, and "effectively nothing" for debts greater than 15 years old. Id., at 23-24.

These prices reflect the basic fact that older debts are harder to collect. As time passes, consumers move or forget that they owe the debts; creditors have more trouble documenting the debts and proving their validity; and debts begin to fall within state statutes of limitations—time limits that "operate to bar a plaintiff's suit" once passed. CTS Corp. v. Waldburger, 573 U. S., 134 S. Ct. 2175, 189 L. Ed. 2d 62, 64 (2014). Because a creditor and a debt collector cannot enforce a time-barred debt in court, the debt is inherently worth very little indeed.

17.    But statutes of limitations have not deterred debt buyers and debt collectors. For years, they have filed suit in state courts to collect even debts too old to be enforced by those courts. See *Holland, The One Hundred Billion Dollar Problem in Small-Claims Court, 6 J. Bus. & Tech. L. 259, 261 (2011)*.

18.    Importantly, the debt buyers' only hope in these cases is that consumers will fail either to invoke the statute of limitations or to respond at all. Most consumers fail to defend themselves in court, in fact, according to the FTC, over 90% fail to appear at all. FTC Report 45. The result is that debt buyers have won "billions of dollars in default judgments" simply by filing suit and betting that consumers will lack the resources to respond. Holland, supra, at 263.

19.    The FDCPA's prohibitions on "misleading" and "unfair" conduct have largely beaten back this particular practice. Every court to have considered the question has held that a debt collector that files suit in court to collect a time-barred debt violates the FDCPA. See Phillips v. Asset Acceptance, LLC, 736 F.3d 1076, 1079 (7th Cir. 2013): Kimber v. Federal Financial Corp., 668 F. Supp. 1480, 1487 (MD Ala. 1987); see also Midland

Funding, LLC v. Johnson, 137 S. Ct. 197 L. Ed. 2d, at 796 (majority opinion) (citing other cases).

20.    The FDCPA prohibits professional debt collectors from engaging in "unfair" and "unconscionable" practices. 15 U. S. C. §1692f. Filing a foreclosure case in state court for debt that a collector knows to be time-barred is just such a practice.

21.    The practice of filing suit in state courts to collect debts that they know are time-barred is precisely the type of practice that the FDCPA seeks to extirpate. Every court to have considered this practice holds that it violates the FDCPA.

22.    Statutes of limitations "are not simply technicalities." Board of Regents of Univ. of State of N. Y. v. Tomanio, 446 U. S. 478, 487, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980). They reflect strong public-policy determinations that it is unjust to fail to put an adversary on notice to defend within a specified period of time." United States v. Kubrick, 444 U. S. 111, 117, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979). And they "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Railroad Telegraphers v. Railway Express Agency, Inc., 321 U. S. 342, 348-349, 64 S. Ct. 582, 88 L. Ed. 788 (1944). Such concerns carry particular weight in the context of large-dollar debt collection.[1]

23.    Debt buyers' efforts to pursue stale debt in ordinary civil litigation also entraps debtors into forfeiting their time defenses altogether. When a debt collector sues or threatens to sue to collect a large debt, many consumers respond by offering a small partial payment

---

[1] As one famously cited opinion explains: "Because few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts, such consumers would unwittingly acquiesce to such lawsuits. And, even if the consumer realizes that she can use time as a defense, she will more than likely still give in rather than fight the lawsuit because she must still expend energy and resources and subject herself to the embarrassment of going into court to present the defense . . . ." Kimber, 668 F. Supp., at 1487.

to forestall suit. In many States, a consumer who makes an offer like this has—unbeknownst to him—forever given up his ability to claim the debt is unenforceable. That is because in most States a consumer's partial payment on a time-barred debt—or his promise to resume payments on such a debt—will restart the statute of limitations. FTC Report 47; see, e.g., Young v. Sorenson, 47 Cal. App. 3d 911, 914, 121 Cal. Rptr. 236, 237 (1975) ("'The theory on which this is based is that the payment is an acknowledgement on the existence of the indebtedness which raises an implied promise to continue the obligation and to pay the balance'"). Debt collectors' efforts to entrap consumers in this way are one of the industry's worst practices.

### Allegations Particular to Mendel Reizes

24.   Upon information and belief, on a date better known by Defendants, Defendants began to attempt to collect an alleged consumer debt from the Plaintiff.

25.   On or about November 10, 2017, Defendant Rosicki sent the Plaintiff a collection letter seeking to collect a balance allegedly incurred for personal purposes.

26.   The alleged debt was originally a home loan with *HSBC Bank* ("HSBC Bank") which fell into default status sometime in 2009.

27.   HSBC Bank accelerated the note and mortgage on March 6, 2010 and HSBC Bank filed for foreclosure on June 1, 2010.

28.   HSBC Bank attached an exhibit (see Exhibit A) to its foreclosure complaint which was a letter stating that the loan was accelerated on March 6, 2010. The said exhibit was an attachment of HSBC Banks initial acceleration letter dated February 3, 2010.

29.   The initial HSBC Bank foreclosure was dismissed on August 25, 2014. HSBC MORTGAGE CORPORATION USA v. REIZES, MENDEL - DISPOSED: 8/24/2014

SUPREME COURT | KINGS COUNTY | Index: 13517/2010.

30.    The accelerated mortgage debt became time-barred on March 6, 2016.

31.    A mortgage debt that becomes time-barred due to the expiration of the statute of limitations becomes unenforceable and loses its legal attachment to the real estate.

32.    The expiration of the statute of limitations does not invalidate the debt, but it does render the debt legally unenforceable thereby severing the debts legal attachment to any real estate.

33.    The FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts.

34.    Defendant Rosicki obtained this loan after it went in to default. The default on this loan occurred prior to the Defendant Rosicki's collection of the time-barred debt.

35.    The actions of each of the Defendants are covered under the FDCPA since the debt at issue was acquired and serviced by the Defendants after the customer defaulted on the loan in question.'

36.    Upon information and belief, on a date better known by Defendants, the Creditor, U.S. Bank Trust and Caliber assigned the defaulted time-barred accelerated debt to Defendant Rosicki for collection.

37.    Defendant Rosicki then embarked on its collection efforts towards the Plaintiff.

38.    Defendant Rosicki were the attorneys representing HSBC Bank in the initial foreclosure. See. HSBC MORTGAGE CORPORATION USA v. REIZES, MENDEL - DISPOSED: 8/24/2014 SUPREME COURT | KINGS COUNTY | Index: 13517/2010

39.    Defendant Rosicki was counsel of record for HSBC Bank in the initial foreclosure

(Index: 13517/2010) and they knowingly and fraudulently commenced the second foreclosure (Index: 523467/2017) despite being counsel on the initial foreclosure.

40.   Defendant Rosicki was counsel of record for HSBC Bank in the initial foreclosure (Index: 13517/2010) and they knowingly and fraudulently commenced the second foreclosure (Index: 523467/2017) despite knowing that this debt was time-barred and that it would be illegal to file a foreclosure on a time-barred debt.

41.   Defendant Rosicki was counsel of record for HSBC Bank in the initial foreclosure (Index: 13517/2010) and they knowingly commenced the second foreclosure (Index: 523467/2017) despite knowing that the first foreclosure was dismissed.

42.   Defendant Rosicki was counsel of record for HSBC Bank in the initial foreclosure (Index: 13517/2010) and they knowingly and fraudulently commenced the second foreclosure (Index: 523467/2017) which knowingly and fraudulently stated in Paragraph 14 "That no prior action was commenced at law or otherwise for the recovery of the sum or any part thereof secured by the said instrument."

43.   Upon information and belief Defendants were additionally aware that Seterus Inc. was the previous servicer of this account.

44.   Upon information and belief Seterus Inc. informed Defendants that this debt became time-barred on March 6, 2016.

45.   Upon information and belief Seterus, Inc. had informed the Defendants that Plaintiff had already sued Seterus, Inc. for collecting on this time-barred debt. Reizes et al v. Seterus, Inc. #: 1:17-cv-03162-RJD-RML (Eastern District of New York).

46.   Upon information and belief Defendants knowingly engaged in all the illegal activity mentioned in this complaint despite knowing that the fraudulent collection of this debt

was being investigated by the New York State Attorney General's Office.

47.    Defendant Rosicki sent Plaintiff a letter dated November 10, 2017 which stated "The

present amount of the debt as of November 10, 2017 is $587,871.60 consisting of:

principal balance of $392,715.02; accrued interest of $130,398.28; late charges of

$2,993.64; Escrow balance of $59,439.74; Broker's Price Opinion, inspection and

miscellaneous charges of $415.00; Attorney Fees of 1,485.00; Search of $425.00. Since

the payment of the debt will fully satisfy the loan, it is greater than the total to reinstate

the loan."

48.    Plaintiff received the letter on November 15th, 2017. On December 11, 2017 The

Plaintiff subsequently sent a dispute letter via facsimile, (see Exhibit B) wherein the

Plaintiff again notified Defendant Rosicki that the said home loan has become time-

barred on March 6, 2016. The dispute letter attached stated:

> **"I received a letter from your firm on November 15th in which you
> reference the above mentioned loan. Please be advised that this debt
> is disputed. The loan referenced above has become time barred on
> March 6th 2016. On March 6, 2016, the Statute of Limitations ran
> out on this debt making this debt time-barred, which in effect bars
> the Creditor, or any debt collector including your law-firm, from
> taking or threatening to take legal action to make me pay this debt
> any time after March 6, 2016. This letter should put your firm on
> notice that taking or threatening to take any legal action on this time
> barred debt will violate the FDCPA and make your firm liable for
> actual and treble damages. Filing a foreclosure on this debt is illegal.
> If your firm decides to sue for foreclosure despite being put on notice
> by this letter that any such action is illegal we will additionally sue
> your firm for fraud."**

49.    HSBC Bank accelerated the note and mortgage on March 6, 2010 and again demanded

the full accelerated loan amount on June 1, 2010. (Exhibit C) See. <u>Deutsche Bank Natl.</u>

<u>Tr. Co. v. Royal Blue Realty Holdings, Inc.</u>, 2017 NY Slip Op 01979, ¶ 2, 148 A.D.3d

529, 530, 48 N.Y.S.3d 597, 597 (App. Div.). ("The letters from plaintiff's predecessor-

in-interest provided clear and unequivocal notice that it "will" accelerate the loan balance and proceed with a foreclosure sale, unless the borrower cured his defaults within 30 days of the letter. When the borrower did not cure his defaults within 30 days, all sums became immediately due and payable and plaintiff had the right to foreclose on the mortgages pursuant to the letters. At that point, the statute of limitations began to run on the entire mortgage debt.")

50.    The foreclosure that was commenced on June 1, 2010 was dismissed by the court on August 25, 2014. The dismissal of the foreclosure did not revoke HSBC's election to accelerate the debt.   See EMC Mortg. Corp. v. Patella, 279 A.D.2d 604, 606, 720 N.Y.S.2d 161, 162-63 (App. Div. 2001) ("Although a lender may revoke its election to accelerate the mortgage, the dismissal of the prior foreclosure action by the court did not constitute an affirmative act by the lender revoking its election to accelerate, and the record is barren of any affirmative act of revocation occurring during the six-year Statute of Limitations period subsequent to the initiation of the prior action (see, Federal Natl. Mtge. Assn. v Mebane, supra, at 894). Consequently, this foreclosure action is time-barred (see, CPLR 213 [4]).")

51.    It is well established that even if a mortgage is usually payable in monthly installments, once the entire amount becomes due, the mortgage debt is accelerated, and the Statute of Limitations begins to run on the entire debt."  See EMC Mtge. Corp. v Patella, 279 AD2d 604, 605 (2nd Dept. 2001); Wells Fargo Bank, N.A. v Burke, supra 94 AD3d at 982; see also Lavin v Elmakiss, 302 AD2d 638, 639(3'd Dept. 2003); Zinkerv Makler, 298 AD2d 516, 517 (3rd Dept. 2003).

52.    RPAPL 1501(4) further provides that "[w]here the period allowed by the applicable

statute of limitation for the commencement of an action to foreclose a mortgage . . . has expired," the mortgages legal attachment to the property is expunged and the owner of the property is granted "the cancellation and discharge of record of such encumbrance, and to adjudge the estate or interest of the plaintiff in such real property to be free therefrom."

53. On March 6, 2016, the Statute of Limitations ran out on this debt making this debt time-barred, which in effect barred the Creditor any debt collector, from taking or threatening to take legal action to make the Plaintiff pay this debt any time after March 6, 2016.

54. New York City regulations require that a debt collector must provide a consumer with specific information about the consumer's rights regarding a time-barred account in every communication with the consumer.

55. Despite being counsel of record for HSBC Bank and despite knowing that this debt became time-barred on March 6, 2016, on December 6, 2017, Defendant Rosicki, on behalf of U.S. Bank Trust, unlawfully misrepresented the legal status of the debt as they filed for foreclosure in the Supreme Court of the State of New York, Kings County, on behalf of the Creditor, U.S. Bank Trust. (See Exhibit D)

56. Defendant Mitchell an attorney who acted on behalf of the Creditor and was the attorney who signed the Certificate of Merit. (see Exhibit E) and falsly stated therein, "I certify that there is a reasonable basis for the commencement of this action … I am aware of my obligations under New York Rules of Professional Conduct (22 NYCRR Part 1200) and 22 NYCRR Part 130."

57. Defendant Mitchell knowingly misrepresented the date of default and fraudulently re-aged the time barred debt.

58.    Defendants invented a fictitious date of defult of Febuary 1, 2012 despite knowing that the accleration letter was dated for Febuary 3, 2010.

59.    Defendants fradulently attempted to re-age the debt as they invented a fictitious date of March 1, 2012 despite knowing that there was a pending forclosure during Febuary and March of 2012.

60.    Defendant Suttell, also an attorney, signed the Request for Judicial Intervention the ("RJI") (see Exhibit F) and falsely stated therein, "I AFFIRM UNDER THE PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING."

61.    Defendants were counsel of record on the initial foreclosure and they knew that there was a previous foreclosure action initiated to collect on this debt.

62.    Defendant Suttell knew that she was perjuring herself when she made this false statement to the court that there were no other foreclosure actions to collect on this debt.

63.    Defendant Mitchell knew his obligations under New York Rules of Professional Conduct (22 NYCRR Part 1200) and 22 NYCRR Part 130 and despite these obligations he falsely and fraudulently stated that "I certify that there is a reasonable basis for the commencement of this action".

64.    Defendant Mitchell knew that he was perjuring himself when he filed a fraudulent complaint that contained numerous false statements and then coupled with this fraud on the court further stated that "I certify that there is a reasonable basis for the commencement of this action."

65.   Defendant knowingly committed fraud on the state court in an attempt to steal the Plaintiff's home.

66.   Defendant knowingly committed fraud on the state court in an attempt to steal over six hundred thousand dollars.

67.   Defendants committed fraud in state court in an attempt to steal the Plaintiff's home as well as over six hundred thousand dollars.

68.   Defendants' main practice is foreclosure law and they were HSBC Banks counsel in the initial foreclosure and they knowingly and fraudulently filed a second foreclosure despite knowing that that the loan was time-barred and that a mortgage debt that becomes time-barred due to the expiration of the statute of limitations becomes unenforceable and loses its legal attachment to the property.

69.   Defendants were given multiple opportunities to stop their fraudulent activity.

70.   Defendant Suttell and Defendant Mitchell continuously and knowingly engaged in this fraudulent scheme despite being put on notice yet again by plaintiff's letter that this debt was time-barred and that any further legal action would be fraudulent.

71.   The Plaintiff's dispute letter sent on December 11, 2017 attached (Exhibit B) specifically stated:

> **"Please be advised that this debt is disputed. The loan referenced above has become time barred on March 6th 2016. On March 6, 2016, the Statute of Limitations ran out on this debt making this debt time-barred, which in effect bars the Creditor, or any debt collector including your law-firm, from taking or threatening to take legal action to make me pay this debt any time after March 6, 2016. This letter should put your firm on notice that taking or threatening to take any legal action on this time barred debt will violate the FDCPA and make your firm liable for actual and treble damages. Filing a foreclosure on this debt is illegal. If your firm decides to sue for foreclosure despite being put on notice by this letter that any such action is illegal we will additionally sue your firm for fraud."**

72.    Defendants have had ample opportunity to dismiss the fraudulent complaint with prejudice.

73.    Defendants knew that the expiration of the statute of limitations renders the debt unenforceable thereby severing the debts legal attachment to any real estate.

74.    The Defendants knew that they could only seek voluntary repayment of the time-barred debt and that they could not initiate or threaten legal action in connection with its debt collection efforts on a time-barred debt.

75.    Defendants knew they were barred from seeking a new foreclosure action on this time-barred debt.

76.    Said lawsuit fraudulently stated in pertinent part as follows:

**"<u>NOTICE</u>**
**<u>YOU ARE IN DANGER OF LOSING YOUR HOME"</u>**
**<u>If you do not respond to this summons and complaint by serving a copy of the</u>**
**<u>answer on the attorney for the mortgage company who filed this foreclosure</u>**
**<u>proceeding against you and filing the answer with the court, a default judgment</u>**
**<u>may be entered and you can lose your home."</u>**

77.    Not only did the Defendant Rosicki threaten legal action on a time-barred debt, but it actually engaged in such fraudulent action and abuse of process.

78.    Paragraph 14 of the said Complaint falsely and fraudulently stated: "That no prior action was commenced at law or otherwise for the recovery of the sum or any part thereof secured by the said instrument."

79.    Fraudulent fillings are not exempt from liability under the FDCPA.

80.    The Second Circuit specifically found that fraudulent statements when made in a lawsuit violate the FDCPA.

81.    "[A]ctions taken in furtherance of a lawsuit are not exempt from liability under the

FDCPA" DiMatteo v. Sweeney, Gallo, Reich & Bolz, LLP, 619 Fed. Appx. 7 (2d Cir. 2015)

82.    "Under these circumstances, where court filings "routinely come to the consumer's attention and may affect his or her defense of a collection claim," debt collectors do not have immunity from FDCPA liability for their litigation conduct," Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, 875 F.3d 128, 137, 2017 BL 407422, 8 (2d Cir. 2017) (citations omitted)

83.    These statements as well as all the other fraudulent statements made in the complaint were made as a fraud on the state court in violation of the FDCPA.

84.    The Defendants actively participated in the preparation and filing of multiple court submissions to the state court which contained false and misleading statements.

85.    These false statements were part of an intentional pattern of collusion, wrongdoing, and deceit which was done with the intent to deceive both the Plaintiff and the New York Supreme Court.

86.    This misconduct was committed in an attorney capacity and these actions were a means to the accomplishment of a larger fraudulent scheme.

87.    Said statements are unconscionably false and were made with the intention to deceive and steal Plaintiff's home as well as hundreds of thousands of dollars.

88.    Defendant Rosicki knew that these statements and legal action were fraudulent as they were counsel on the previous case that was dismissed. HSBC MORTGAGE CORPORATION USA v. REIZES, MENDEL - DISPOSED: 8/24/2014 SUPREME COURT | KINGS COUNTY | Index: 13517/2010.

89.    Defendant Rosicki was again further put on notice by the Plaintiff's fax that this debt

was time-barred. Defendant Rosicki was warned and given multiple opportunities not to engage in fraud.

90.    The Plaintiff's dispute letter sent on December 11, 2017 attached (Exhibit B) specifically stated:

> **"Please be advised that this debt is disputed. The loan referenced above has become time barred on March 6th 2016. On March 6, 2016, the Statute of Limitations ran out on this debt making this debt time-barred, which in effect bars the Creditor, or any debt collector including your law-firm, from taking or threatening to take legal action to make me pay this debt any time after March 6, 2016. This letter should put your firm on notice that taking or threatening to take any legal action on this time barred debt will violate the FDCPA and make your firm liable for actual and treble damages. Filing a foreclosure on this debt is illegal. If your firm decides to sue for foreclosure despite being put on notice by this letter that any such action is illegal we will additionally sue your firm for fraud."**

91.    Since the loan became time-barred on March 6, 2016, Defendants knowingly misrepresented the legal status of this time-barred debt which violated the FDCPA and they further violated the FDCPA by intentionally filling a fraudulent legal action which they knew could <u>not</u> be pursued.

92.    Since the loan was a time-barred debt, the filling of a legal action is not permitted under the law. Defendants filed a fraudulent action in violation of the FDCPA.

93.    The letter dated November 10, 2017 failed to include a notice which would clearly state per New York law that the debt was time-barred.

94.    Defendants violated the FDCPA for misrepresenting the legal status of the debt and for using fraudulent means in attempting to collect on a time-barred debt.

95.    Defendants misrepresented the legal status of the debt and they falsely threatened the imposition of interest and fees on a time-barred debt in violation of the FDCPA.

96.    Defendants could not misrepresent the status or enforceability of the debt. Defendants

knew that no other available actions were permitted under the law to collect this debt.

97. Defendant Rosicki could not accumulate any interest or legal fees with regard to this time-barred debt and certainly could not charge the Plaintiff for the accrual of any such forbidden interest and fees.

98. The letter and the foreclosure action additionally contained numerous deceptive statements and knowingly omitted the important mandatory disclosures, including § 2-191 of the Rules of the City of New York's notification requirement for time-barred debts.

99. The letter dated November 10, 2017 said nothing about when the debt was incurred, and it contained no hint that the six-year statute of limitations applicable in New York had long since expired.

100. On March 6, 2010, HSBC Bank accelerated the entire debt making the debt time-barred six years from March 6, 2010.

101. In the State of New York, the statute of limitations to sue on a mortgage or the note is six years after the demand of the entire amount due.

102. Defendants had waited after the entire loan had become time-barred to threaten and illegally file suit on this debt.

103. Defendants misrepresented the legal status of the debt in violation of section 1692e, which prohibits a debt collector from "threatening to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5).

104. Congress in passing the FDCPA prohibited threatening to take any illegal action when collecting debts. All courts that have addressed this issue have concluded that the additional step of actually taking the illegal action is most definitely a violation of the

FDCPA.[2]

105.    Filing a suit to collect on a debt for which the statute of limitations has run violates the FDCPA.

106.    Thus, Defendants violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f by misrepresenting the legal status and by threatening to file and actually filling a lawsuit on a time-barred suit, making it liable to the Plaintiff.

107.    "The statute of limitations in a mortgage foreclosure action begins to run from the due date for each unpaid installment, or from the time the mortgagee is entitled to demand full payment, or from the date the mortgage debt has been accelerated." [3]

108.    Once a mortgage debt is accelerated by a demand for the entire amount of the loan, the borrower's right to make monthly installments ceases, all sums becomes immediately due and payable, and the six-year statute of limitations begins to run on the entire mortgage debt.[4]

109.    New York City regulations require that a debt collector must provide a consumer with specific information about the consumer's rights regarding a time-barred account in every communication with the consumer.

110.    The unpaid installments and the entire loan became due on March 6, 2010 and the debt became time-barred on March 6, 2016.

---

[2] Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, 875 F.3d 128 (2d Cir. 2017) ("Our holding is consistent with section 1692e, which prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5). It is unlikely that Congress would prohibit threatening to take an illegal action while permitting the additional step of actually taking the illegal action. See Currier, 762 F.3d at 535-36 (holding that under section 1692e, alleged illegal conduct "can also fairly be characterized as a threat to take [that illegal action]"). Our holding also coheres with decisions of our sister circuits, which have held that unfair or unconscionable litigation conduct violates section 1692f. See, e.g., Kaymark v. Bank of Am., N.A., 783 F.3d 168, 174 (3d Cir. 2015) (filing foreclosure complaint seeking attorney's fees not yet incurred; Currier, 762 F.3d at 535 (maintaining invalid lien on debtor's property); **Phillips v. Asset Acceptance, LLC, 736 F.3d 1076, 1079 (7th Cir. 2013) (filing suit to collect debt for which the statute of limitations had run.")** (emphasis added)

[3] In re Strawbridge, 2012 U.S. Dist. LEXIS 29751, 2012 WL 701031 [SDNY 2012], citing Plaia v Safonte, 45 AD3d 747, 748, 847 N.Y.S.2d 101 [2d Dept 2007]; Zinker v Makler, 298 AD2d 516, 517, 748 N.Y.S.2d 780 [2d Dept 2002]; Notarnicola v. Lafayette Farms, Inc., 288 AD2d 198, 199, 733 NYS2d 91 [2d Dept 2001]; EMC Mtge. Corp. v Patella, 279 AD2d 604, 605, 720 NYS2d 161 [2d Dept 2001]; Loiacono v. Goldberg, 240 AD2d 476, 477, 658 NYS2d 138 [2d Dept 1997])

[4] See Federal National Mortgage Assn v Mebane, 208 AD2d 892, 894, 618 NYS2d 88 [2d Dept 1994]; Clayton Nat'l, Inc. v Guldi, 307 AD2d 982, 763 N.Y.S.2d 493 [2d Dept 2003]).

111.    The Statute of Limitations to collect on this debt expired on March 6, 2016, therefore, misrepresenting the legal status and threatening legal action on this time-barred debt is a violation of the FDCPA.

112.    Upon information and belief, the Defendants knew that this deceptive debt collection technique would be particularly effective in pressuring unsophisticated consumers into settling debts, even those that would otherwise be time-barred.

113.    Moreover, upon information and belief, the Defendants knew that if it tricked a consumer into making just one payment on a stale, time-barred debt, the statute of limitations would restart.

114.    When collecting on a time-barred debt, a debt collector must not misrepresent the legal status of the debt in any way.

115.    When collecting on a time-barred debt, a debt collector must inform the consumer that (a) the collector cannot sue to collect the debt; and (b) providing a partial payment would revive the Defendants' ability to sue to collect the balance.

116.    Defendants threatened and attempted to collect on a time-barred debt, whose Statute of Limitations had admittedly already run out.

117.    Defendants fraudulently engaged in the filling of a legal action on a time-barred debt, which is not permitted under the law.

118.    It is part of the Defendant Rosicki's pattern and practice to send and cause the sending of letters, such as the November 10, 2017 letter, that seek to collect time-bared debts and to not disclose that the debts are in fact time-barred, and therefore, legally unenforceable.

119.    The Federal Trade Commission ("FTC") has determined that "Most consumers do not

know their legal rights with respect to collection of old debts past the statute of limitations.... When a debt collector tells a consumer that he owes money and demands payment, it may create the misleading impression that the debt collector can sue the consumer in court to collect that debt."

120.    On January 30, 2013, the FTC issued its report, The Structure and Practices of the Debt Buying Industry, available at http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf. The report reaffirms its position in the United States of America v. Asset Acceptance, LLC, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), American Express Centurion Bank (FDIC-12-315b, FDIC- 12-316k, 2012-CFPB-0002), American Express Bank, FSB (2012-CFPB-0003) and American Express Travel Company, Inc. (2012-CFPB-0004) cases, that a defendant may violate the FDCPA by sending a collection letter demanding payment of a time-barred debt without disclosing that the debt was time-barred.

121.    Courts have also held that even a debt collector's mere "settlement" offer made to a consumer on a time-barred debt is misleading.[5]

122.    The language in the said letter unlawfully suggests that the debt was accruing interest and is recent enough to be legally enforceable. All circuit courts that have addressed this issue have even found the mere offer of a settlement on a time-barred debt to be in violation of the FDCPA. See Daugherty v. Convergent Outsourcing, Inc., No. 15-20392, 2016 U.S. App. LEXIS 16531, at *1-2 (5th Cir. Sep. 8, 2016) ("The issue presented by this appeal is whether a collection letter for a time-barred debt containing a discounted "settlement" offer—but silent as to the time bar and without any mention of litigation— could mislead an unsophisticated consumer to believe that the debt is enforceable in

---

[5] See e.g., McMahon v. LVNV Funding, LLC, 744 F.3d 1010 (7th Cir. 2014).

court, and therefore violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. After receiving such a letter, the plaintiff credit card debtor sued the defendant debt collectors pursuant to the FDCPA. The district court dismissed the complaint, holding that efforts to collect time-barred debts without threatening or filing suit do not violate the FDCPA. We reverse. While it is not automatically unlawful for a debt collector to seek payment of a time-barred debt, a collection letter violates the FDCPA when its statements could mislead an unsophisticated consumer to believe that her time-barred debt is legally enforceable, regardless of whether litigation is threatened." Buchanan v. Northland Grp., Inc., 776 F.3d 393, 397 (6th Cir. 2015) (same) McMahon v. LVNV Funding, LLC, 744 F.3d 1010, 1020 (7th Cir. 2014). (same) Tatis v. Allied Interstate, LLC, No. 16-4022, 2018 BL 46172 (3d Cir. Feb. 12, 2018) (same)

123. Defendant Rosicki could have taken the steps necessary to bring its actions within compliance with the FDCPA but neglected to do so and failed to adequately review its actions to ensure compliance with the law.

124. Upon information and belief, Defendant Rosicki sent a written communication, such as the November 10, 2017 letter to at least fifty (50) natural persons in the State of New York within one year of the date of this Complaint.

125. Section 1692e of the FDCPA states:

> "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of –
>
> (A) the character, amount, or legal status of any debt[.]"

126. Defendant Rosicki misled Plaintiff as to what possible action might be legally taken

against him and deceptively used this threat in attempting to collect on this alleged debt.

127.  In so doing, Defendant Rosicki preyed upon the ignorance of unsophisticated consumers.

128.  By employing the tactics, it did, Defendant Rosicki played upon and benefitted from the probability of creating a deception.

129.  Honest disclosure of the legal unenforceability of the collection action due to the time-lapse since the debt was incurred would have foiled Rosicki's efforts to collect on the debt.

130.  By suing the Plaintiff on the alleged debt, Defendant Rosicki violated §§ 1692e(2)(A) and 1692(10) by threatening and fraudulently filling an illegal action, Defendant Rosicki implicitly represented that it could recover this debt with a lawsuit, when in fact it could not legally do so.

131.  Whether a debt is legally enforceable is a central fact about the character and legal status of that debt. A knowing misrepresentation about that fact is a fraudulent act which violates the FDCPA.

132.  Defendants' letter and fraudulent lawsuit was false, deceptive and misleading representations and means done in connection with the collection of the time-barred debt.

133.  Defendants' letter and fraudulent lawsuit contained false representations of the character, amount and legal status of the debt;

134.  Defendants' letter and fraudulent lawsuit threatened to take action that could not legally be taken and that cannot be taken, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A),

1692e(5), and 1692e(10).[6]

135.    Said actions of the Defendants were unjust and wrong in the filling of legal action on time-barred debt.[7]

136.    Upon information and belief, Defendants' filing of time-barred debt in the State Action against the Plaintiff, far from being an isolated instance, is part of a policy and practice pursuant to which the Defendants intentionally file time-barred claims knowing that the vast majority of claims filed will result in default judgments or will be not be contested by unsophisticated pro-se consumers who are unaware of the CPLR § 202 and its impact upon the statute of limitations.

137.    Available actions permitted under the law to collect on such time-barred debts <u>do not</u> include the filling of a legal action or accrual of legal fees.

138.    The misrepresentation of the debt collector's ability to file a legal action on a time-barred debt is a violation of the FDCPA.

139.    At the time that U.S. Bank Trust transferred the said home loan to the Defendants, U.S. Bank Trust was aware that the Plaintiff was being represented by counsel.

140.    The fact that U.S. Bank Trust's records, which it had received from HSBC, reflected that

---

[6] <u>Buchanan v. Northland Grp., Inc.</u>, 776 F.3d 393 (6th Cir. 2015). (A misrepresentation about the limitations period is a "straightforward" violation of § 1692ee(2)(A). The failure to disclose that partial payment on a time-barred debt would renew the creditor's ability to sue could mislead a consumer into paying and digging herself into a deeper hole. An unsophisticated debtor who cannot afford the settlement offer might nevertheless assume from the letter that some payment is better than no payment. This would not be true, since some payment is worse than no payment, as the general rule in Michigan is that partial payment restarts the statute of limitations clock, giving the creditor a new opportunity to sue for the full debt. In response to the argument that the court's interpretation would require debt collectors to give legal advice to every debtor about the statute of limitations, the court stated that "this is not a herculean task," as demonstrated by the fact that the collection agency had changed its letters to make the following disclosure under applicable circumstances: "The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding L.L.C. will not sue you for it, and LVNV Funding L.L.C. will not report it to any credit reporting agency."), McMahon v. LVNV Funding, L.L.C., 744 F.3d 1010 (7th Cir. 2014). (The court held that the consumers stated claims for relief under §§ 1692e and 1692f where the defendants sent dunning letters that did not disclose that the debts were time-barred and that made an "offer to settle" at a stated percentage savings off the current balance because, even without an actual threat of suit, "it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable.") <u>Rawson v. Source Receivables Mgmt., L.L.C.</u>, 2012 WL 3835096 (N.D. Ill. Sept. 4, 2012) (complaint alleging that a dunning letter implied the debt was legally enforceable when it was actually barred by the statute of limitations stated a claim under the FDCPA; defendants' letter that threatened "further collection efforts" and encouraged the plaintiff "to make arrangements for payment" could arguably lead an unsophisticated debtor to believe that the debt was legally enforceable)

[7] <u>Crawford v. LVNV Funding, LLC</u>, 758 F.3d 1254, 2014 U.S. App. LEXIS 13221, 59 Bankr. Ct. Dec. 205, 25 Fla. L. Weekly Fed. C 92 (11th Cir. Ala. 2014)

the Plaintiff was being represented by counsel

141.   Defendants further attempted to serve Plaintiff's counsel since they were aware that Plaintiff was represented by counsel; despite this knowledge, Defendant Rosicki ultimately communicated directly with the Plaintiff in the November 10, 2017 collection notice which culminated in a lawsuit against him.

142.   Section 1692b of the FDCPA provides:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall –
>
> (6) After the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to the communication from the debt collector.
>
> Section 1692c of the FDCPA provides:
>
> (a)   COMMUNICATION   WITH   THE   CONSUMER GENERALLY.  Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt --
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

143.   The Defendants' conduct aggravated and harassed the Plaintiff.

144.   The Defendants knew or should have known that its actions violated the FDCPA.

145.   The Plaintiff received the initial letter dated November 10, 2017 letter on or about November 15, 2017.

146.    The Defendants then filed for foreclosure on December 6, 2017, which happened to be during the Plaintiff's thirty-day validation period, which overshadowed the Plaintiff's thirty-day validation rights, without providing an explanation that his rights would be preserved.

147.    In Ellis v. Solomon & Solomon, *P.C.* 591 F.3d 130 (2d Cir. 2010). The Second Circuit held that an FDCPA debt verification notice was overshadowed by the debt collector's service of a collection lawsuit on the consumer during the thirty-day period for a consumer to request verification of the debt, since the collector failed to explain or clarify in either the dun or a notice provided with the summons and complaint that the commencement of the lawsuit had no effect on the information conveyed in the debt verification notice.

148.    On December 11, 2017 at night someone rang Plaintiff's door bell. The Plaintiff answered the door and asked the individual to identify himself. The man at the door would not identify himself and only stated that he was looking for a Mendel Reizes since he had foreclosure papers he needed to give to a Mendel Reizes.

149.    The individual at the door stated that he can only serve Mendel Reizes once Mendel Reizes or the person accepting service identified himself. Plaintiff again asked the person at the door to identify himself, but the person stated that he could not do so.

150.    On December 14, 2017 the same individual rang the Plaintiff's door bell. The Plaintiff answered the door and asked the person standing at the door to identify himself. The man at the door would not identify himself and only stated that he was looking for a Mendel Reizes since he had papers he needed to give to Mendel Reizes.

151.    The man at the door further stated that he was hired by Defendant Rosicki to deliver a

lawsuit on behalf of U.S Bank and that he would need to give it to Mendel Reizes or someone who would identify themselves.

152.   The Defendant Rosicki's attempted service of the lawsuit during the thirty-day validation period overshadowed and contradicted the thirty-day validation rights that it provided to the Plaintiff in the initial letter.

153.   Defendant Rosicki failed to explain or clarify in either the dun or a notice provided with the summons and complaint that the commencement of the lawsuit had no effect on the information conveyed in the debt verification notice.

154.   Section 1692g(b) of the FDCPA states:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, **the debt collector shall cease collection of the debt**, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. (emphasis added)

155.   The Plaintiff faxed a dispute to the Defendant on December 11, 2017 (see attached letter and eFax receipt, Exhibit B), yet the Defendants failed to cease collection of the debt and even attempted to serve the Plaintiff on December 14, 2017, December 16, 2017, and December 19, 2017 and further mailed a letter on December 22, 2017.

156.   Plaintiff disputed the debt under the FDCPA, thus precluding Defendants from taking any further action until it completed verification of the debt.

157.   The dispute rights afforded under the FDCPA were designed specifically to prevent the illegal and fraudulent activity that defendants have perpetrated in this case.

158.   Plaintiff put the Defendants on notice that any foreclosure action would be illegal, time-

barred and fraudulent.

159. Defendants received the faxed dispute on December 11, 2017 Defendants were put on notice and knew it could not serve plaintiff with a lawsuit on a time-barred debt.

160. The Plaintiff's dispute letter sent on December 11, 2017 specifically stated; "**This letter should put your firm on notice that taking or threatening to take any legal action on this time barred debt will violate the FDCPA and make your firm liable for actual and treble damages. Filing a foreclosure on this debt is illegal. If your firm decides to sue for foreclosure despite being put on notice by this letter that any such action is illegal we will additionally sue your firm for fraud**."

161. The Defendants received the Plaintiff's dispute and knew that they must cease collecting on the debt until they can mail verification.

162. Defendants knew that they would never be able to provide verification of the debt since it was time-barred and illegal to file the said foreclosure.

163. The Defendants overshadowed the Plaintiff's thirty-day verification rights when they attempted to serve him with a fraudulent law-suit during the thirty-day validation period.

164. The Defendants intentionally served plaintiff with a fraudulent lawsuit despite being foreclosed from doing so after being in receipt of Plaintiff's dispute.

165. Plaintiff notified the Defendants in writing within the thirty-day period described in the FDCPA that the debt was disputed. Defendants were obligated to cease collection of the debt, until it obtained and mailed plaintiff verification.

166. In addition to the fact that Defendants could never serve the Plaintiff with a lawsuit on a time-barred debt. Defendants further knew that without an additional disclosure they could not serve the Plaintiff a lawsuit during the thirty-day validation period and that

any such service would overshadow and contradict the thirty-day verification rights.

167. Defendants additionally knew that they could not serve the Plaintiff once the debt had been disputed.

168. Defendants cannot and have not provided Plaintiff with any verification of the debt.

169. The Defendants took multiple fraudulent illegal actions against the Plaintiff when it knew and should have known that there was no factual basis for its abusive actions,

170. Defendants should have conducted the minimum due diligence required under New York law regarding abuse of process, frivolous pleadings, and misstating the amount, character and legal status of the Plaintiff's debt.

171. Defendants abuse of process was in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f and 1692f(1).

172. As a result of the Defendants' fraudulent legal action, Plaintiff has suffered pecuniary and non-pecuniary harm.

173. The Plaintiff's actual damages, without limitation, sleep deprivation, stomach pains, anxiety and difficulty in performing his work.

174. The Plaintiff also suffered damage to his credit and credit report.

175. The Plaintiff's damages also include the cost of retaining counsel to defend and dismiss the fraudulent State Action.

176. Upon information and belief, the said November 10, 2017 letter was the Defendant Rosicki's initial communication with the Plaintiff. (See Exhibit G)

177. The letter fails to adequately convey the "amount of the debt":

178. The said letter stated the balance due and then stated in part: "The amount of the debt will continue to increase due to interest, fees and other charges."

179.    This statement is false since the debt was time-barred and would not increase due to interest and fees and other charges.

180.    This language violates §1692g(a)(1), which requires debt collectors to inform consumers of the amount of the debt, and § 1692e, which prohibits the use of false, deceptive, or misleading representations in connection with the collection of a debt.

181.    The language stated above violates these provisions because it fails to inform Plaintiff whether the amount listed is the actual amount of the debt due, what other interest or charges might apply and what the legal basis for these fees were.

182.    The letter does not provide any contractual explanation or information about the claimed accruing interest and charges.

183.    In order to comply with the FDCPA's provision which mandates that a collector inform the consumer in its initial communication of "the amount of the debt" the collector must give the consumer the tools in which the consumer could easily calculate the amount due on the date, he or she receives the letter.

184.    In order to comply with the FDCPA's provision which mandates that a collector inform the consumer in its initial communication of "the amount of the debt" the collector must give the consumer the tools in which the consumer could easily calculate what he or she will need to pay to resolve the debt at any given moment in the future.

185.    The failure to provide this information or tools to ascertain "the amount of the debt" on the date of receipt of the letter or at any give other time in the future does not comply with 1692g as it fails to <u>meaningfully</u> provide "the amount of the debt".

186.    It is not enough that the collector provides "the amount of the debt" on the date of the letter. The consumer must be able to know the interest rate and be able to discern the

amount of the debt at given time in the future.

187.    In Carlin v. Davidson Fink LLP, 852 F.3d 207, 216 (2d Cir. 2017), the Second Circuit clarified its holding in *Avila* by explaining that a collection letter "is incomplete where . . . it omits information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause the balance to increase."

188.    The debt in this case was time-barred and not accruing interest. If the defendants would have complied with the FDCPA amount of the debt provision it would have been forced to convey to the plaintiff that in fact, there is no legal interest rate and that the debt is time-barred and has past the statute of limitations.

189.    This language in the collection letter did not adequately state the amount of the debt, as required under the FDCPA. In particular, the collection letter failed to specify or explain what part of the contract gave rise to interest as well as what the interest rate was or what type of charges could cause the balance to increase, nor did they inform the debtor what he or she would need to pay to resolve the debt at any given moment in the future. The letter precluded a determination of what "the amount if the debt" was on the date of receipt of the letter.

190.    The least sophisticated consumer would not understand how the fees would be calculated; what the current interest rate was and whether they could be disputed; or what provision of the underlying credit agreement gave rise to them.

191.    The collection notice included a vague disclosure without providing any "clarity as to

whether new fees and costs are accruing or as to the basis for those fees and costs".[8]

192.    Similar to <u>Carlin</u>, the Collection Letter, in this case, refers with vagueness to "accrued interest or other charges," without providing any information regarding the rate of interest; the nature of the "other charges"; how any such charges would be calculated; and what portion of the balance due, if any, reflects already-accrued interest and other charges. By failing to provide even the most basic level of specificity in this regard, it would be impossible to conclude whether those amounts are properly part of the amount of the debt," for purposes of section 1692g.[9]

193.    Defendant Rosicki knew that this debt was time-barred, and they did not and could not refer the Plaintiff to the underlying contract with the original lender. As was true in <u>Carlin</u>, the least sophisticated consumer would not understand from this reference what provision of the agreement, if any, gives rise to the potential "accrued interest and other charges" described in the said collection letter especially in this case where the debt was time-barred and not accruing any interest and fees.

194.    Defendant Rosicki's collection letter violates sections 1692g(a)(1) and 1692e of the FDCPA, since the collection letter failed to adequately convey the "amount of the debt".

195.    The question of whether a collection letter is deceptive is determined from the perspective of the "least sophisticated consumer."

196.    While § 1692e specifically prohibits certain practices, the list is non-exhaustive, and does not preclude a claim of falsity or deception based on any non-enumerated practice.

197.    A collection letter is deceptive under 15 U.S.C. § 1692e if it can reasonably be read by the least sophisticated consumer to have two or more meanings, one of which is

---

[8] <u>Carlin, 852 F.3d at 217</u>
[9] <u>Carlin, 852 F.3d at 216</u>.

inaccurate.

198.    A collection letter is also deceptive under 15 U.S.C. § 1692e if it is reasonably susceptible to an inaccurate reading by the least sophisticated consumer.

199.    The letter fails to inform Plaintiff whether the amount listed is the actual amount of the debt due. This is especially problematic since the debt in this case was time-barred and not accruing interest since March 6[6,] 2016.

200.    The letter fails to inform Plaintiff whether the amount listed already includes accruing "interest."

201.    The letter fails to inform Plaintiff whether the amount listed already includes "fees and other charges."

202.    The letter fails to advise Plaintiff that interest ceased on March 6, 2016.

203.    The letter fails to advise Plaintiff what portion of the amount listed is principal.

204.    The letter fails to inform Plaintiff whether the amount listed will increase.

205.    The letter fails to inform Plaintiff what "fees and other charges" might apply.

206.    The letter fails to inform Plaintiff if "fees and other charges" are applied, when such "other charges" will be applied.

207.    The letter fails to inform Plaintiff if "fees and other charges" are applied, what the amount of those "fees and other charges" will be.

208.    The letter fails to inform Plaintiff of the nature of the "fees and other charges."

209.    The letter fails to inform Plaintiff if there is accruing "interest," what the amount of the accruing interest will be.

210.    The letter fails to inform Plaintiff if there is accruing "interest," when such interest will be applied.

211.    Although this debt was not accruing interest the letter mentions interest yet fails to inform Plaintiff if there is accruing "interest," what the interest rate is.

212.    The letter fails to inform Plaintiff if there is accruing "interest," the amount of money the amount listed will increase per day.

213.    The letter fails to inform Plaintiff if there is accruing "interest," the amount of money the amount listed will increase per week.

214.    The letter fails to inform Plaintiff if there is accruing "interest," the amount of money the amount listed will increase per month.

215.    The letter fails to inform Plaintiff if there is accruing "interest," the amount of money the amount listed will increase per any measurable period.

216.    The letter fails to indicate the minimum amount Plaintiff owed at the time of the letter.

217.    The letter fails to provide information that would allow the least sophisticated consumer to determine the minimum amount he or she owes at the time of the letter.

218.    The letter fails to provide information that would allow the Plaintiff to determine that the debt was time-barred and not accruing interest.

219.    The letter, because of the aforementioned failures, would render the least sophisticated consumer unable to determine the legal status as well as the amount of his debt.

220.    The least sophisticated consumer could reasonably believe that the amount listed was accurate only on the date of the letter.

221.    Although this debt is time-barred and no fees can accrue if "fees and other charges" are continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate the nature of the "fees and other charges."[10]

---

[10] Carlin v. Davidson Fink LLP, 852 F.3d 207 (2d Cir. 2017), Balke v. All. One Receivables Mgmt., No. 16-cv-5624(ADS)(AKT), 2017 U.S. Dist. LEXIS 94021, at *14 (E.D.N.Y. June 19, 2017). ("[T]he Collection Letter in this case refers with vagueness to "accrued interest or other

222.    In order to induce payments from consumers that would not otherwise be made if the consumer knew that the debt was time-barred, Defendant Rosicki does not inform the consumer amount listed will never increase.

223.    In order to induce payments from consumers that would not otherwise be made if the consumer knew the debt was static and time-barred, Defendant Rosicki does not inform the consumer what "fees and other charges" would not apply.

224.    In order to induce payments from consumers that would not otherwise be made if the consumer knew that the debt was time-barred, Defendant Rosicki does not inform the consumer that interest or fees can never be applied.

225.    Defendant Rosicki failed to clearly and unambiguously state the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

226.    Defendants' letter falsely threated that a static time-barred debt would increase due to interest and fees.

227.    The Defendants' letter would likely make the least sophisticated consumer uncertain as to the amount of the time-barred debt, in violation of 15 U.S.C. § 1692g(a)(1).

228.    The letter would likely make the least sophisticated consumer confused as to the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

229.    Defendants' conduct constitutes a false, deceptive and misleading means and representation in connection with the collection of the debt, in violation of 15 U.S.C. § 1692e.

230.    The letter can reasonably be read by the least sophisticated consumer to have two or

---

charges," without providing any information regarding the rate of interest; the nature of the "other charges"; how any such charges would be calculated; and what portion of the balance due, if any, reflects already-accrued interest and other charges. By failing to provide even the most basic level of specificity in this regard, the Court "cannot say whether those amounts are properly part of the amount of the debt," for purposes of section 1692g.Carlin, 852 F.3d at 216. Further, as set forth in Carlin, without any clarifying details, the Collection Letter states only that these unspecified assessments may be added to the balance due, which the Court finds to be insufficient to "accurately inform[ ] the [Plaintiff] that the amount of the debt stated in the letter will increase over time.")

more meanings concerning the actual balance due, one of which must is inaccurate, in violation of 15 U.S.C. § 1692e.

231. Defendants' conduct violated 15 U.S.C. §§ 1692g(a)(1) and 1692e.

232. Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendants.

233. Plaintiff suffered actual harm by being the target of the Defendants' misleading debt collection communications.

234. Defendants violated the Plaintiff's right not to be the target of misleading debt collection communications.

235. Defendants violated the Plaintiff's right to a truthful and fair debt collection process.

236. Defendants used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

237. Defendants' communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendants' collection efforts.

238. The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Defendants' false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

239. These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

240.    Defendants fraudulently misrepresented the legal status of the Plaintiff's debt and attempted to engage in a theft of more than six hundred thousand dollars.

241.    As an actual and proximate result of the acts and omissions of defendants, Plaintiff has suffered including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment for which he should be compensated in an amount to be established by a jury at trial.

## AS AND FOR A FIRST CAUSE OF ACTION

*Violations of the Fair Debt Collection Practices Act brought by Plaintiff on behalf of himself and the members of a class, as against the Defendants.*

242.    Plaintiff re-states, re-alleges, and incorporates herein by reference, paragraphs one (1) through two hundred and forty one (241) as if set forth fully in this cause of action.

243.    This cause of action is brought on behalf of Plaintiff and the members of a class.

244.    Class A consists of all persons whom Defendants' records reflect resided in the State of New York and who were sent a collection letter in substantially the same form letter as the letter sent to Plaintiff on or about November 10, 2017; and (a) the collection letter was sent to a consumer seeking payment of a personal debt; and (b) the collection letter was returned by the postal service as undelivered; (c) and Plaintiff asserts that the letter contained violations of 15 U.S.C. §§ 1692e and 1692g(a)(1) for the use of any false representation or deceptive means to collect or attempt to collect any debt, for misrepresenting the amount of the debt owed by Plaintiff and for failing to accurately state the amount of the debt in the initial communication.

245.    Class B consists of all individuals who have mailing addresses within the State of New York; who within one year before the filing of this action; (a) were sent a summons and

complaint in a form materially identical or substantially similar to the summons and complaint sent by the Defendants to the Plaintiff; (d) regarding a debt that was time-barred by the applicable Statute of Limitations; and (e) the Plaintiff asserts that the letter contained violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10).

246. Class C consists of all individuals who have mailing addresses within the State of New York; who within one year before the filing of this action; (a) were sent a collection letter in a form materially identical or substantially similar to the form letter sent by the Defendants to the Plaintiff; (d) regarding a debt that was time-barred by the applicable Statute of Limitations; and (e) which was not returned by the postal service as undelivered; and (f) the Plaintiff asserts that the letter contained violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10).

247. Class D consists of all persons whom Defendants' records reflect resided in the State of New York and who were sent a collection letter, (a) bearing the Defendants' letterhead in substantially the same form as the letters sent to the Plaintiff on November 10, 2017; (b) the collection letter was sent to a consumer seeking payment of a personal debt; and (c) the collection letter was not returned by the postal service as undelivered; and (d) the Defendants violated 15 U.S.C. §§ 1692b(6) and 1692c(a)(2) of the FDCPA for communicating with the Plaintiff though the Defendants had the knowledge that Plaintiff was represented by an attorney.

248. Class E consists of all persons whom Defendants' records reflect resided in the State of New York and who were sent a collection letter in substantially the same form letter as the letter sent to the Plaintiff on or about November 10, 2017; and (a) the collection letter was sent to a consumer seeking payment of a personal debt; and (b) the collection

letter was not returned by the postal service as undelivered; (c) and the Plaintiff asserts that the said letter violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692g(b) for false and deceptive statements and for using unfair or unconscionable means to collect a debt, and for overshadowing the Plaintiff's validation rights.

249.    Class F consists of all persons whom Defendants' records reflect resided in the State of New York and who were sued by the defendant on behalf of a creditor; and (a) the state suit was filed against a consumer seeking payment of a personal debt and was dismissed due to the matter having passed the statute of limitations period; and; (c) and the Plaintiff asserts that the said actions violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f, for false and deceptive statements and for using unfair or unconscionable means to collect a time-barred debt.

250.    Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

A. Based on the fact that a form collection letter and collection lawsuit complaints are at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

B. There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principal question presented by this claim is whether the Defendants violated the FDCPA.

C. The only individual issue is the identification of the consumers who received such collection letters and lawsuits (*i.e.* the class members), a matter capable of ministerial determination from the records of Defendant.

D. The claims of the Plaintiff are typical of those of the class members. All are based on the same facts and legal theories.

E. The Plaintiff will fairly and adequately represent the class members' interests. The Plaintiff has retained counsel experienced in bringing class actions and collection-abuse claims. The Plaintiff's interests are consistent with those of the members of the class.

251. A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. § 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

252. If the facts are discovered to be appropriate, the Plaintiff will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

253. Collection attempts, such as those made by the Defendants are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

### *Violations of the Fair Debt Collection Practices Act*

254. The Defendants' actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

255.  Because the Defendants violated the Fair Debt Collection Practices Act, the Plaintiff and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendants and award damages as follows:

A.  Statutory and actual damages provided under the FDCPA, 15 U.S.C. § 1692(k);

B.  Attorney fees, litigation expenses and costs incurred in bringing this action; and

C.  Any other relief that this Court deems appropriate and just under the circumstances.

## AS AND FOR A SECOND OF ACTION

*Violations of Judiciary Law § 487, brought by Plaintiff against Defendant Rosicki*

256.  Plaintiff re-states, re-alleges, and incorporates herein by reference, the foregoing paragraphs.

257.  Defendant Rosicki is guilty of fraud and deceit in the State Action that it brought against the Plaintiff.

258.  Defendant Rosicki perpetrated this deceit with intent to deceive the state court, and the Plaintiff.

259.  Specifically, as stated above, Mr. Mitchell, Ms Suttell on behalf of and together with Defendant Rosicki, fraudulently signed on and filed an action on a time-barred debt and falsely represented that there was no previous action to foreclose on this home.

260.  Defendant falsely misrepresented the facts alleged therein and causing it to be filed with the Kings County Civil Court in an attempt to deceive plaintiff and the state court.

261.    Defendant falsely misrepresented the facts alleged therein and causing it to be filed with the Kings County Civil Court in an attempt to steal from plaintiff.

262.    Defendants individually and collectively, knowingly misrepresented that the action was lawful when they knew that debt was time-barred.

263.    Defendants falsely stated that there was no prior action. Paragraph 14 of the said Complaint falsely and fraudulently stated: "That no prior action was commenced at law or otherwise for the recovery of the sum or any part thereof secured by the said instrument."

264.    Such a statement is outright fraud on the court as well as attorney deceit in violation of Judiciary Law § 487

265.    These false representations were made under oath and under the penalty of perjury.

266.    As a result of these false representations, the Plaintiff has suffered damages including but not limited to sleep deprivation, stomach pains, anxiety, difficulty in performing his work, damage to his credit and the he cost of retaining counsel to defend and dismiss the State Action.

267.    Defendant Rosicki's false representations are, as described above, part of a larger, recurring policy and practice that is designed and has the effect of increasing Defendant Rosicki's profits by falsely and intentionally mispresenting the legal status of consumers time-barred debts.

268.    The Plaintiff is entitled to treble his damages as a result of Defendant Rosicki's violations of Judiciary Law § 487, reasonable attorney's fees, and costs.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment in his favor and against the Defendant and award damages as follows:

A.  Treble damages, costs and reasonable attorney's fees; and

B.  Such other and further relief as law or equity may provide.

Dated: Woodmere, New York
March 13, 2018


_____/s/ Adam J. Fishbein_____
Adam J. Fishbein, P.C.  (AF-9508)
Attorney At Law
**Attorney for the Plaintiff**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com

Plaintiff requests trial by jury on all issues so triable.


_____/s/ Adam J. Fishbein____
Adam J. Fishbein (AF-9508)